SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Assistant United States Attorney
Paul.Maloney@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:24-cr-00391-IM-3 |
| v. | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| **JOSE LUIS MALFAVON LOPEZ**, | |
| **Defendant.** | |

Defendant is presently charged with conspiracy to possess with intent to distribute and distribute methamphetamine facility in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846. As alleged in Count One of the superseding indictment, this offense carries a mandatory minimum sentence of 10 years' imprisonment, and a statutory maximum of life.  As alleged in the information, defendant has prior serious drug trafficking conviction in violation of 21 U.S.C. § 851, which increases the mandatory minimum sentence to 15 years' imprisonment.

This offense carries a presumption of detention. Defendant seeks to be released back into the community where he was on supervision for a similar offense at the time of his arrest for the

**Government's Motion for Pretrial Detention**                                    **Page 1**

offense alleged in this case.  For the reasons that follow, defendant is not a suitable candidate for release, and should be detained.

## I.      LEGAL STANDARDS

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  Where a defendant is charged with a controlled substances offense with a statutory maximum of more than 10 years' imprisonment, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(a)(e)(3)(A). Typically, U.S. Pretrial Services reports do not consider or weigh this factor in their release recommendations.

Even if rebutted, the presumption of detention does not disappear; it continues to carry evidentiary weight. "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotations and citation omitted).  Other relevant factors include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the

**Government's Motion for Pretrial Detention**                                    **Page 2**

danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.

The government bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *Winsor*, 785 F.2d at 756. *See also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

Each of the release factors weighs strongly in favor of pretrial detention in this case.

## II.    APPLICATION TO THIS CASE

### A.    *Nature and Circumstances of the Offense*

The nature of this offense, conspiracy to distribute controlled substances, is a serious offense. Defendant is charged with a controlled substances offense carrying a 10-year mandatory minimum sentence and a potential life sentence. The Bail Reform Act specifically directs courts to consider controlled substances offenses as particularly serious offense by indicating that offenses like defendant's begin with a presumption of detention.

The facts and circumstances of this drug conspiracy, as well as defendant's role in the conspiracy are equally serious. This multi-agency investigation began in the summer of 2024. Investigators were investigating a transnational drug trafficking organization ("DTO") operating in the Portland Oregon area. Through a months long investigation DEA task force investigators detected, disrupted and dismantled various cells of the organization operating in Oregon, Washington, and California. Investigators believe defendant was a Portland area distributor who

**Government's Motion for Pretrial Detention**                                    **Page 3**

arranged for the interstate transportation of bulk quantities of methamphetamine to be distributed drugs to others. Based on physical and electronic communication including intercepted communications over defendant's cellphone, investigators believe defendant was a trusted member of the DTO responsible for distributing bulk quantities of drugs to other members of the DTO. The facts and circumstances that resulted in defendant's arrest were detailed in an affidavit submitted with the sealed complaint for two of his co-conspirators (filed in 24-mj-238).

In October, 2024 investigators lawfully monitored communications between defendant and co-defendant Falla Moreno. Falla Moreno was using a phone number ending in -5116 ("Subject Phone-5116" or "SP-5116").  Defendant and others used coded language to conceal the true nature of their criminal activities. Investigators believe defendant had arranged for Falla Moreno to transport deliver 55 pounds of methamphetamine to Oregon at a price of $850 per pound. Defendant and Falla Moreno agreed that Falla Moreno would get the drugs from a source of supply in California and deliver the drugs to Salem, Oregon for pickup on October 28, 2024.

Investigators were also lawfully monitoring the geolocation data for Falla Moreno's SP-5116. On October 28, 2024, task force investigators watched as SP-5116 began to travel north from San Jose, California towards Oregon along the I-5 highway. Investigators continued to monitor the phone's location and deployed to locate and stop the individual(s) with the phone.

At approximately 10:00 a.m. investigators located a 2017 white Ford Fusion bearing a California plate driving northbound on I-5 near Canyonville, Oregon. DMV records associated to Fusion's plate indicated that the car was registered to an individual sharing Falla Moreno's last name in San Jose, California. Investigators noted that the DMV record address was in the vicinity of the location where SP-5116 had been pinging before it began to travel north. Investigators noted that SP-5116's geolocation data was located within the general vicinity of the

**Government's Motion for Pretrial Detention**                                        **Page 4**

Fusion (+/- 1164 meters), and traveling in tandem with the Fusion.  Investigators driving beside the Fusion observed a Hispanic male driver that matched the physical appearance of photo associated to defendant's California driver's license.

At approximately 11:09 a.m. task force investigators stopped the Fusion. Falla Moreno was in the driver's seat. Luis Rodolpho Perez Romo was seated in the Fusion's back seat. Investigators detained both men at the scene. A narcotics canine alerted to the presence of drugs inside the Fusion's trunk. Believing the mobile vehicle contained illegal drugs and evidence of narcotics trafficking, investigators searched the car. Inside the trunk of the Fusion, task force investigators found bulk quantities of methamphetamine inside a grey plastic tote. The images below depict the drugs seized:

 

The drugs weighed approximately 27.12 kilograms (gross weight including packaging materials) and field tested positive for the presence of methamphetamine.

Investigators found an iPhone in Falla Moreno's pants pocket. Investigators called SP-5116 from a private phone number and the iPhone began to ring and display indicators of an incoming call from a private phone number. Investigators seized the drugs, cellphone and arrested both men.

**Government's Motion for Pretrial Detention**                                    **Page 5**

Later, after being advised of his Miranda warnings, Falla Moreno agreed to speak with investigators about the drugs. Defendant stated that he had previously distributed a 10-pound load of methamphetamine to defendant in Salem, Oregon. Falla Moreno stated he had recruited Perez Romo and agreed to pay him $500-$1,000 to help with the driving. Falla Moreno said he had shown Perez Romo the contents of the trunk before they left California and Perez Romo was aware of the purpose of the trip.

Unbeknownst to Falla Moreno and defendant, the customer defendant was going to sell the drugs to was an informant working with the investigators. Through the investigation, investigators identified two cellphone numbers defendant used to conduct his criminal activities, and obtained court authorization to wiretap these communications.

On November 20, 2024, a grand jury sitting in Portland Oregon issued a superseding indictment alleging defendant and others had conspired to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846 (Count 1). An arrest warrant issued for defendant's arrest.

On November 22, 2024, Investigators obtained a search warrant for defendant's residence. On November 25, 2025, investigators arrested defendant at his workplace and executed the search warrant. Investigators seized the two cellphones investigators had been monitoring over the wiretap. Defendant declined to make a statement to investigators.

On November 26, 2024, defendant made his initial appearance in federal court where he was arraigned on the indictment, pled not guilty and requested a jury trial. Defendant was detained (without prejudice) pending the trial After multiple continuances, defendant's matter is now set for a date certain jury trial before Judge Karin J. Immergut set to begin August 18, 2026. Defendant now seeks release.

**Government's Motion for Pretrial Detention**                                    **Page 6**

Based on the facts outlined above, investigators believe defendant was a large-scale distributor with connections to a Mexico-based DTO. Defendant demonstrated the ability to arrange for a 55 pound methamphetamine delivery. The investigation indicated that defendant was able to obtain and sell multiple drug types in bulk.

Defendant made frequent calls to an unidentified source of supply in Mexico. Defendant is from Mexico and has no lawful status in the United States.   At the time of his arrest, defendant was on post-prison supervision. In December 2023, defendant was released from prison following a 96-month term of incarceration for conspiracy to deliver drugs. The government has filed an information alleging this prior conviction which increases the mandatory minimum sentence in this case to 15 years' imprisonment.

"Consideration of the nature of the offenses charged involves consideration of the penalties." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, this is a serious crime that Congress sought to punish with harsh sanctions of not less than 10 years to life imprisonment.  Under the federal sentencing guidelines, defendant's relevant conduct is a base offense level of 38. Based on the weight of the actual methamphetamine he had conspired to distribute The government estimates defendant's criminal history to be a CHC II (262-327) or CHC III (292-365), prior to any reductions.

### B.    *Weight of the Evidence*

Where the weight of the evidence tells in favor of a defendant being a flight risk when the facts make a defendant, "subject to a trial in which they could reasonably believe they might be convicted." *Townsend*, 897 F.2d at 995. Here, the evidence in this case consists of witness testimony, officer observations and testimony, digital evidence, as well as physical and electronic surveillance and intercepted wiretap communications, that establish defendant's participation and

**Government's Motion for Pretrial Detention**                                                    **Page 7**

role in the conspiracy. The government anticipates there will be expert testimony about the weight and drug testing for the drugs seized in this case. Although the weight of the evidence is the "least important factor" for release determinations, the weight of the evidence is extremely strong and defendant faces a near certainty of conviction should he go to trial. *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972).

The weight of evidence against defendant is overwhelming, therefore this factor weighs in favor of detention.

### C.    Defendant's History and Characteristics

The U.S. Pretrial services officer prepared a report for defendant's initial appearance, and that details defendant's history. Defendant is not a U.S. citizen. Defendant was arrested on this offense while on post-prison supervision for a similar offense. Defendant criminal history consists of a 1999 conviction for possession with intent to distribute drugs (75 days jail with five years' probation), and a 2019 conviction for conspiracy to distribute drugs (96 months prison with 24 months' post-prison supervision). Defendant was released from the Oregon Department of Corrections on December 12, 2023. At the time of his arrest, defendant was working various janitorial jobs, and had been placed on Marion County Probation's "Limited Supervision" case load. These jobs and minimal supervision afforded defendant the ability to meet his drug suppliers and customers to distribute large quantities of drugs.

At his initial appearance, defendant declined to be interviewed by pretrial services and they recommended detention. Their report from the initial appearance indicates defendant is a citizen of Mexico. If defendant has no legal status to be in the United States, he therefore cannot legally be employed in this country.

**Government's Motion for Pretrial Detention**                                                    **Page 8**

In all likelihood, defendant will be convicted in this criminal case. That eventuality creates a strong incentive for him to disregard any release conditions the Court may issue. Defendant will have a strong incentive to decide not to stand trial in the District of Oregon, where conviction seems a near certainty given the nature and circumstances of this case, and the weight of the evidence. Facing this stark prospect, there is little certainty that defendant will comply with the conditions of release or return to court for trial.

For these reasons, this factor also weighs in favor of detention.

### D.    *Nature and Seriousness of the Danger Posed by Defendant's Release*

If he is released, defendant will have a strong incentive to flee from supervision and his history of involvement with narcotics offenses indicates he is an extreme risk to return to dealing controlled substances.

Additionally, defendant has demonstrated an inability to steer on the right side of the law while on post-prison supervision. It therefore stands to reason, that defendant's proposed conditions of release in this case will not be sufficient guards to deter defendant from further crimes, especially given the strong incentives he has to either flee the United States or resume narcotics trafficking to repay the DTO for the drugs that were seized in this case.

The government does not believe sufficient conditions exist that will secure defendant's future presence in court. This is not a situation where a defendant claims that his criminal activities and his risk of non-appearance are related to a drug addiction. Rather, the government's investigation indicates that defendant is a bulk narcotics trafficker, who disregarded the rules of his supervision and took a shortcut to profit from the drug trade.

Furthermore, defendant's drug dealing history presents an unreasonable risk of danger to the community. The terms of the deal defendant negotiated indicated defendant was to receive $850

**Government's Motion for Pretrial Detention**                                    **Page 9**

per pound for 55 pounds of methamphetamine ($46,750). This is a substantial sum. DTOs frequently operate by fronting trusted distributors bulk quantities of drugs with the expectation of payment from the proceeds of the drug sales. Here, DEA investigators seized drugs defendant was expecting to sell for nearly $50,000. DTOs are not charities. They expect repayment.

Defendant is responsible for a significant financial loss to the DTO. The DTO will very likely hold the members of this conspiracy responsible for the seizure. This is a significant incentive for defendant to return to drug trafficking to repay this debt.

Alternatively, the fact of the DTO wanting him to repay this debt, and his inability to lawfully work in this country, defendant will have an incentive to abscond pretrial supervision to evade both the government and the DTO who seek to hold him accountable. Accordingly, there are no conditions or combination of conditions that defendant is likely to comply with that will assure his presence to the safety of the community. Defendant's limited family ties to Oregon are insufficient to assure defendant's compliance with the conditions of release in this case, and are unlikely to assure his compliance in this case given the strong pressures that are likely to result in his absconding supervision, or resuming his criminal activities.

For these reasons, this factor also weighs in favor of detention.

/ / / /

/ / / /

## III.    CONCLUSION

For these reasons defendant is, more likely than not, a flight risk. The facts and evidence from the investigation demonstrate he is clearly and convincingly a danger to the community. Therefore, no condition or combination of conditions will assure his future appearance, and the safety of the community. Defendant should be detained pending trial.

Dated: June 22, 2026                                  Respectfully submitted,

                                                      SCOTT E. BRADFORD
                                                      United States Attorney

                                                      PAUL T. MALONEY, OSB #013366
                                                      Assistant United States Attorney

**Government's Motion for Pretrial Detention**                          **Page 11**